### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL CALLAHAN,

              **Petitioner,**

    v.

KEVIN RANSOM, *et al.*,

              **Respondents.**

**CIVIL ACTION NO.  22-1824**

### MEMORANDUM OPINION

**Rufe, J.**                                              **February 27, 2026**

Petitioner Paul Callahan filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After full briefing, Magistrate Judge Scott W. Reid entered a Report and Recommendation ("R&R") that the habeas petition be denied in part and dismissed in part.[1] Petitioner filed objections to the R&R.[2] Respondents filed a response to the objections, to which Petitioner filed a reply in support of his objections.[3]

For the reasons stated herein, the R&R will be approved, Mr. Callahan's claims will be dismissed as procedurally defaulted, and Mr. Callahan's petition for habeas corpus relief will be denied.

## I.    PROCEDURAL HISTORY

The Court adopts the procedural history set forth in the R&R, which has not been challenged in Mr. Callahan's objections. The Court restates the history that is relevant to Mr. Callahan's objections.

---

[1] R&R [Doc. No. 25].

[2] Pet.'s Objs. to R&R [Doc. No. 26].

[3] Govt. Answer to Objs. [Doc. No. 29]; Pet.'s Reply Supp. Objs. [Doc. No. 30].

On April 30, 2015, following a jury trial in the Bucks County Court of Common Pleas, Mr. Callahan was convicted of two counts of rape of a child, two counts of aggravated indecent assault (complainant less than 13 years of age), three counts of indecent assault (complainant less than 13 years of age), and three counts of unlawful contact with a minor.[4] The facts underlying this conviction pertained to Mr. Callahan's sexual assault of his three stepdaughters over a period of years, while he was living in a household with the girls and their mother.[5]

Among ample evidence, including testimony from all three minor victims, evidence admitted at trial included: The victims' mother called the police in February 2011, when one of her daughters, identified as K.S., told her that Mr. Callahan had sexually abused her in several ways, including digital penetration.[6] K.S. was taken to the Children's Hospital of Philadelphia for an examination by Sexual Assault Nurse Examiner Elizabeth Bangs.[7] After examination, no injuries were found on K.S.'s body, but Nurse Bangs took swabs from her mouth and several areas on her genitals.[8] Shortly after the examination, K.S. recanted her statements about the abuse by Mr. Callahan, and the swabs were not tested for DNA at that time.[9]

In October 2014, K.S. and her two sisters jointly reported Mr. Callahan's sexual abuse to the police.[10] After this report, the swabs taken in 2011 were obtained and tested for DNA.[11] A partial DNA profile consistent with Mr. Callahan was found on one of the swabs.[12] Another

---

[4] R&R at 1 [Doc. No. 25]; *Commonwealth v. Callahan* Trial. Tr. 4/30/15 at 121-126.

[5] *Commonwealth v. Callahan*, No. 1381 EDA 2020, 2021 WL 4119559 at *1 (Pa. Super. Ct., Sep. 9, 2021).

[6] *Commonwealth v. Callahan*, CP-09-CR-0001168-2015, at *2-3 (C.C.P. Bucks, Aug. 11, 2020).

[7] Sexual Assault Nurse Examiner  is abbreviated as "SANE". *Callahan*, 2021 WL 4119559 at *1, *2.

[8] *Id*. at *2.

[9] *Id*.

[10] *Callahan*, CP-09-CR-0001168-2015, at *4-5 (C.C.P. Bucks, Aug. 11, 2020).

[11] *Callahan*, 2021 WL 4119559 at *2.

[12] *Id*.

swab contained male DNA, but Mr. Callahan was excluded.[13] The prosecution's expert explained that this "exclusion" could mean either that the DNA did not belong to Mr. Callahan or that the sample contained insufficient data to determine whether his DNA was present.[14]

Prior to trial, Mr. Callahan's defense team retained a DNA expert and forensic biologist, Katherine Cross, as a consultant.[15] She provided defense counsel with an expert report pointing to weaknesses in the Commonwealth expert's test results and identified certain documents she would need to conduct a more thorough analysis.[16] Ms. Cross did not appear as a witness at trial.[17]

Mr. Callahan was convicted by a jury, then sentenced on September 2, 2015, to 106 to 212 years of incarceration. He was also designated a sexually violent predator. On February 3, 2016, the trial court reconsidered the sentence and imposed a sentence of 63 ½ to 127 years of incarceration.[18]

Mr. Callahan filed a direct appeal to the Pennsylvania Superior Court on several claims,[19] and in December 2017, the court granted relief on Mr. Callahan's designation as a sexually

---

[13] *Id.* at *1.

[14] *Id.*

[15] *Commonwealth v. Callahan*, CP-09-CR-0001168-2015, at *16-17 (C.C.P. Bucks, Aug. 11, 2020).

[16] *Id.*

[17] *Callahan*, 2021 WL 4119559, at *4.

[18] *Commonwealth v. Callahan*, No. 621 EDA 2016, 2017 WL 6545961, at *2 (Pa. Super. Ct., Dec. 22, 2017).

[19] The claims Mr. Callahan brought on direct appeal include: "(1) the trial court erred in permitting the introduction into evidence of enlarged color photographs of K.S.'s genital area obtained during the SANE examination; (2) the verdict was based on insufficient evidence regarding the required ages of victims, and dates of specified acts; (3) the verdict was against the weight of the evidence; (4) trial counsel ineffectively failed to object to defective jury instructions and a defective verdict sheet 'that expanded criminal culpability to conduct beyond the statutory requirements that the victims be under 13'; (5) the trial court abused its discretion in sentencing Callahan to consecutive maximum sentences; and (6) the finding that Callahan was a sexually violent predator was based on insufficient evidence." R&R at 3 [Doc. No. 25] (citing *Callahan*, 2017 WL 6545961, at **4-5).

violent predator and denied his appeal in all other respects.[20] The Pennsylvania Supreme Court

denied allowance of appeal.

Mr. Callahan filed a timely PCRA petition on February 20, 2019.[21] Counsel was

appointed and filed an amended PCRA petition.[22] After briefing, the PCRA court issued a notice

of intent to dismiss the petition pursuant to Pennsylvania Rule of Criminal Procedure 907.[23] Mr.

Callahan filed a *pro se* response.[24] Thereafter, counsel filed a Second Amended PCRA petition,

which reasserted claims from the Amended PCRA and explained why claims raised in Mr.

Callahan's *pro se* response lacked merit.[25] The PCRA court denied the Second Amended PCRA

petition as untimely.[26]

Mr. Callahan appealed the dismissal of the Second Amended PCRA petition to the

Pennsylvania Superior Court, arguing several new claims.[27] The Pennsylvania Superior Court

denied relief,[28] and the Pennsylvania Supreme Court denied allowance of appeal.[29]

---

[20]  *Callahan*, 2017 WL 6545961, at *11. The Pennsylvania Superior Court noted that the claim of ineffective assistance of trial counsel should be raised on collateral appeal, rather than on direct appeal.

[21] *Callahan*, 2021 WL 4119559, at *1.

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] The claims that Mr. Callahan argued on appeal included: "(a) trial counsel was ineffective in failing to object to the testimony of Nurse Elizabeth Bangs, because she opined that K.S. had been sexually assaulted even though there was no physical evidence discovered during her examination of the victim, thus bolstering the credibility of the victim's oral statements to her; (b) trial counsel was ineffective in failing to object to SANE Nurse Bangs' testimony regarding internal statistics from the Children's Hospital of Pennsylvania, where no such statistics were a part of her expert report or produced in discovery; [and] (c) trial counsel was ineffective for failure to call defense DNA expert Katherine Cross as a witness." R&R at 4 [Doc. No. 25] (citing *Callahan*, 2021 WL 4119559, at *1).

[28] *Callahan*, 2021 WL 4119559, at *2.

[29] *Commonwealth v. Callahan*, 273 A.3d 505 (Pa. 2022).

Mr. Callahan filed a second PCRA petition in the Bucks County Court of Common Pleas on April 12, 2022. It was dismissed as untimely on September 13, 2023.[30] Mr. Callahan appealed the denial.[31] The Superior Court denied the appeal, and the Pennsylvania Supreme Court denied allowance of appeal.[32]

On May 9, 2022, Mr. Callahan filed the instant petition for a writ of habeas corpus,[33] which he amended on June 9, 2022.[34] In the initial and amended petitions, Mr. Callahan raised the following claims:[35] (1) he was subject to an illegal search and seizure of his DNA sample; (2) the Commonwealth presented "inflammatory nude photographs" from a 2011 "criminal conviction that [he] was 'exonerated' from" in violation of his double jeopardy rights; (3) his Sixth Amendment rights were violated by allegedly perjured testimony by K.S.; (4) his right to due process was violated in that he "never was afforded to present a complete defense at trial and appeals and Commonwealth never had any evidence to combat the testimony given at trial"; (5) trial counsel was ineffective for failing to seek suppression of testimony of Mr. Callahan's oldest stepdaughter, T.S., that she had for many years convinced herself that episodes of Mr. Callahan raping her when she was in her bed at night which took place when she was nine years old were

---

[30] *Commonwealth v. Callahan*, No. 2569 EDA 2023, 2024 WL 4824167, at *3 (Pa. Super. Ct., Nov. 19, 2024).

[31] *Id*. at *3-4. On appeal, Mr. Callahan argued that "(1) the Bucks County District Attorney was involved in a pattern and practice of misconduct concerning the DNA laboratory's testing and reporting practices; (2) the Bucks County District Attorney violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose the lab's negligent and wrongful processing of reports and testing; (3) he was in possession of new evidence in the form of a recent report from Ms. Cross, identifying wrongdoing committed by the DNA laboratory; (4) trial counsel was ineffective in failing to call Ms. Cross as a witness at trial; (5) the PCRA court erred in denying him a hearing; and (6) PCRA counsel did not communicate well with him or his family, and did not pursue his claim of government interference concerning the DNA laboratory." R&R at 5 [Doc. No. 25].

[32] *Callahan*, 2024 WL 4824167, at *3-4.

[33] Pet. for Habeas Corpus [Doc. No. 1].

[34] Am. Pet. for Habeas Corpus [Doc. No. 10].

[35] While the claims are not clearly numbered in the initial and amended habeas petitions, the Court will refer to each numbered claim as "Claim [No.]" for consistency and clarity throughout the opinion. That is, the claim listed as number one will be Claim 1, the claim listed as number 2 will be claim 2, and so on.

nightmares, and only realized during psychotherapy that they were actual memories, as well as supporting testimony from Dr. Veronique Valliere, an expert in sexual assault victim behavior; (6) trial counsel was ineffective in failing to object to the trial judge's instruction regarding "prompt complaint" which differed from the Pennsylvania standard instruction; (7) trial counsel was ineffective in failing to call Katherine Cross as an expert witness; (8) trial counsel was ineffective in failing to suppress photographs of K.S.'s genital area; (9) trial counsel was ineffective in failing to object to the prosecutor's remarks in his closing argument which bolstered the credibility of the witnesses; (10) trial counsel was ineffective in failing to object to jury instructions and a verdict sheet that directed jurors they did not need to "determine specific dates" of sexual assault; (11) trial counsel was ineffective in failing to object to SANE nurse Bangs' testimony; and (12) trial counsel was ineffective in failing to call character witnesses. As to certain claims, Mr. Callahan argues PCRA counsel was ineffective in failing to raise the claims before the state court.[36]

The R&R dismissed all claims, finding the majority were unexhausted and procedurally defaulted. However, the R&R also addressed the merits of each claim and found that even if procedural default were excused, the claims would fail.

Mr. Callahan submits a number objections to the R&R, some numbered and some not,[37] including that: (1) the R&R misapplied *Shlup v. Delo*[38] and the actual innocence gateway; (2) the R&R failed to address Petitioner's "Traverse"; (3) new evidence establishes an actual innocence gateway, which the R&R did not address; (4) the R&R failed to address Petitioner's *Brady v.*

---

[36] *See Martinez v. Ryan*, 566 U.S. 1 (2012).

[37] For thoroughness, the Court will address all issues raised in Callahan's objections, regardless of whether they were properly identified as objections.

[38] 513 U.S. 289 (1995).

*Maryland*[39] and ineffective assistance of trial counsel claims; (5) the procedural default is excused due to PCRA counsel's alleged ineffectiveness; (6) the R&R did not address Petitioner's discovery and record expansion requests; (7) the R&R "erred by fragmenting evidence, making premature credibility determinations, and reverting to procedural finality"; (8) the R&R made premature credibility determinations in violation of *Shlup*; (9) the R&R did not consider all old and new evidence in its totality; (10) the R&R "misused" *Wallace v. Mahanoy*[40] to enforce procedural default; (11) the R&R did not address "newly discovered" affidavits from Katherine Cross; (12) the R&R misapplied § 2254's deference standard; (13) the R&R misapplied *Strickland v. Washington*;[41] (14) the R&R ignored supporting allegations for counsel's conflict of interest claim; (15) the R&R did not conduct an independent review of harmless error of the Pennsylvania Superior Court's determination that admission of the SANE photographs was harmless error; (16) the R&R did not consider the cumulative effect of prosecutorial bolstering; (17) the R&R dismissed Petitioner's Fourth Amendment claim before reviewing the actual innocence gateway; (18) the R&R's double jeopardy analysis was too narrow; (19) prosecutorial misconduct and bias relating to laboratory practices were dismissed as procedurally defaulted without assessing its impact on evidentiary reliability; (20) the R&R did not complete a *Strickland* prejudice analysis of Petitioner's claim that trial counsel was ineffective for failing to call character witnesses; (21) the R&R did not address additional discovery raised in Petitioner's "Traverse"; and (22) the R&R did not conduct an independent review of whether state procedural rulings were independent and adequate grounds for procedural default.

---

[39] 373 U.S. 83 (1963).

[40] 2 F.4th 123 (3d. Cir. 2021).

[41] 466 U.S. 668 (1984).

## II.    LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the ability of a court to grant a writ of habeas corpus. Federal courts cannot grant a habeas claim if it is unexhausted, procedurally defaulted, and does not meet an exception to exhaustion or procedural default.[42] If a state court fully considered the merits of the claim, a federal court may not grant habeas relief unless the adjudication (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.[43]

Before a federal court can consider the merits of a habeas claim under 28 U.S.C. § 2254, a petitioner must fully exhaust the claim before the state court. This gives "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[44] In Pennsylvania, one complete round of appellate review process requires the claim be presented at least to the Pennsylvania Superior Court.[45]

Failure to exhaust may be excused when that exhaustion would be futile.[46] When exhausting a claim in state court is futile because of a procedural bar in state court, the claim is subject to the rule of procedural default.[47]

---

[42] 28 U.S.C. § 2254.

[43] 28 U.S.C. § 2254.

[44] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[45] *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

[46] *Lambert v. Blackwell*, 134 F.3d 506, 518-19 (3d Cir. 1997).

[47] *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A federal court may not review a habeas claim that was dismissed on procedural grounds based on an independent and adequate state procedural rule.[48] "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."[49] A procedural rule is independent if it is independent of the federal question presented by the petitioner. It is adequate if the rule was "firmly established, readily ascertainable, and regularly followed at the time of the purported default."[50]

Procedural default cannot be overcome unless a habeas petitioner shows: (a) cause for failure to comply with state procedural rules and resulting prejudice; or (b) that a fundamental miscarriage of justice will result if the claim is not considered.[51] A fundamental miscarriage of justice ordinarily requires a strong showing of actual innocence.[52]

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

### A.    Exhaustion

Most of Mr. Callahan's claims have not been exhausted in Pennsylvania state court. Regarding Claim 1, he has not raised a claim in state court that his DNA was illegally seized. Mr. Callahan alluded to this claim briefly in his "Motion to Amend Record Under Pa. Rule 907," which he filed after the Court of Common Pleas issued an order indicating its intention to dismiss his first amended PCRA petition.[53] However, after that submission, Mr. Callahan's

---

[48] *Coleman v. Thompson*, 501 U.S. 722, 749 (1991).

[49] *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (quoting *Colemen*, 501 U.S. at 732).

[50] *Szuchon v. Lehman*, 273 F.3d 199, 327 (3d Cir. 2001).

[51] *Edwards*, 529 U.S. at 451; *Schlup v. Delo*, 513 U.S. 298, 314 (1995).

[52] *Schlup*, 513 U.S. at 314-15.

[53] Gov't Resp. to Am. Habeas Pet. at 26 [Doc. No. 11].

counsel filed a second amended PCRA petition, which did not raise the claim.[54] Mr. Callahan also did not raise the claim in his PCRA appeal.[55] The claim is not exhausted.

Similarly, Mr. Callahan has never before argued Claim 2, that the admission of photographs taken in 2011 of K.S. during her SANE examination constituted double jeopardy. This claim was not presented to the state court and is unexhausted.

Claim 3 is entitled "6th Amendment Violation of a Confrontation Clause, Purgered [sic] Testimony by [K.S.], Conflict of Interest, Compulsory Witness to solicit or retain the Doctor from 2011 sexual assault & forensic biologist to oppose the DA case." This claim does not appear to have been raised before the Pennsylvania state courts. Within this claim, Mr. Callahan argues that he "[n]ever confronted that initiator/accuser, counselors never provided me effective assistance of counsel during trial and appeals, trial counselor was convicted of sex charges." Mr. Callahan mentioned this issue in his Motion to Amend the Record Under Pa. Rules of 907, but his later-appointed counsel reviewed the issue, found it to be meritless, and did not pursue the claim further or present the issue on appeal to the Pennsylvania Superior Court.[56] Accordingly, this claim did not receive one full round of state court appellate review, and it is unexhausted.

Claim 4 alleges that Mr. Callahan's due process rights were violated and that he "never was afforded to present a complete defense at trial and appeals and Commonwealth never had any evidence to combat testimony given at trial." Mr. Callahan did not raise a claim under state or federal due process clauses and he did not present a claim alleging violations of the Fourteenth Amendment to the state courts. Accordingly, this claim is unexhausted.

---

[54] *Callahan*, 2021 WL 4119559, at *1.

[55] *Id*. at 2.

[56] Gov't Resp. to Am. Habeas Pet. at 35 [Doc. No. 11].

In Claim 5, Mr. Callahan argues that trial counsel was ineffective in failing to suppress testimony from T.S. and failing to investigate the techniques and processes used by her therapist to identify that episodes of rape she identified as dreams when she was nine years old were actually memories of abuse. This claim was not presented to the state court, so it is unexhausted.

Claim 6 alleges that trial counsel was ineffective for failing to object to the trial court's jury instructions regarding prompt complaints of abuse. This prompt complaint claim was not presented to the state courts, so it is unexhausted.

In Claim 8, Mr. Callahan claims trial counsel was ineffective in failing to move for suppression of the SANE photographs. This claim was not properly presented to the state court. On direct appeal, Mr. Callahan argued that the trial court erred in admitting the photos, but he has not before claimed that trial counsel was ineffective in failing to suppress them. This claim is unexhausted.

In Claim 9, Mr. Callahan alleges that trial counsel was ineffective in failing to object to statements made in the prosecutor's closing statement which he alleges impermissibly bolstered K.S.'s credibility. This claim, similarly, was not presented to the state court and is unexhausted.

In Claim 10, Mr. Callahan alleges that trial counsel was ineffective in failing to object to jury instructions and language on the verdict sheet which he alleges included a time range for the crimes charged which extended beyond the date when each respective victim turned thirteen, even though the crimes required the victim to be under thirteen years old. He raised this issue in his direct appeal, but the Pennsylvania Superior Court refused to decide it on the grounds that state law required such claims of trial counsel ineffectiveness to be considered in post-conviction

review.[57] However, Mr. Callahan did not raise the claim in any of his PCRA petitions, and the claim did not receive one full round of appellate review by the state court, so it is unexhausted.

In Claim 12, Mr. Callahan argues that trial counsel was ineffective for failing to present character witnesses on his behalf. The claim was not presented to the Pennsylvania state courts and is unexhausted.

All ten claims that are unexhausted are procedurally defaulted. Pennsylvania law requires that a PCRA petition be filed within one year after the date a defendant's judgment becomes final. At the latest, Mr. Callahan's judgment became final 90 days after the Pennsylvania Supreme Court denied his petition for review on direct appeal, or on October 2, 2018. Therefore, his deadline for filing a PCRA petition would be October 2, 2019. The PCRA statute of limitations presents exceptions for governmental interference, newly discovered evidence, and a constitutional right newly recognized by the Supreme Court of the United States or the Pennsylvania Supreme Court made retroactive on appeal by that court.[58]

None of these ten claims present new evidence, allege governmental interference, or assert a newly recognized constitutional right. Accordingly, none of Pennsylvania's exceptions to the PCRA statute of limitations apply to any of these claims. Pennsylvania courts dismissed Mr. Callahan's second PCRA petition as untimely. There is no possibility that it would consider a third PCRA petition for Mr. Callahan to seek exhaustion of these claims as he had argued no exception to the timeliness requirement. The PCRA statute of limitations is an independent and adequate state law ground for the purposes of finding procedural default.[59]

The ten unexhausted claims are procedurally defaulted.

---

[57] *Callahan*, 2017 WL 6545961, at *7.

[58] 42 Pa. Const. Stat. § 9545(b).

[59] *See Bronshtein v. Horn*, 404 F.3d 700, 708-09 (3d Cir. 2005).

### B.    Procedural Default

Mr. Callahan presented Claims 7 and 11 to the Pennsylvania state courts. Claim 7 alleges that trial counsel was ineffective in failing to call Katherine Cross as a defense expert witness at trial to refute the prosecution's presentation of the DNA evidence. Mr. Callahan first raised this claim in his first PCRA appeal. He attached a copy of Cross's report to his PCRA petition, but the PCRA court did not hold an evidentiary hearing or formally enter the report into the record. The Pennsylvania Superior Court rejected Mr. Callahan's claim regarding Cross as waived under Pennsylvania Rule of Appellate Procedure 2119(c) because Mr. Callahan "fail[ed] to cite the report or develop any argument as to how Cross's testimony based on her report would have been beneficial."[60] Rule 2119(c) is an independent and adequate state procedural rule.[61] "The requirement that Petitioner must meaningfully develop his arguments on appeal and cite to appropriate authorities has been stated in unmistakable terms by the Pennsylvania Supreme Court and is embodied in the state's rules of appellate procedure."[62] The Superior Court refused to consider the merits of the claim, which is consistent with other decisions.[63]

Claim 11 alleges that trial counsel was ineffective in failing to object to or suppress testimony from nurse Bangs. Mr. Callahan raised a claim in his first PCRA appeal that trial counsel was ineffective in failing to suppress SANE nurse Bangs' testimony that only 21% of sexual abuse examinations at CHOP yielded physical findings. This claim was raised before the

---

[60] *Callahan*, 2021 WL 4119559, at *4.

[61] *Leake v. Dillman*, 594 F. App'x 756, 759 (3d Cir. 2014). *See also Anderson v. Irwin*, No. 22-3361, 2024 WL 3507211, at *7 (E.D. Pa. May 30, 2024); *Smith v. Oberlander*, No. 22-2671, 2023 WL 4672387, at *9 (E.D. Pa. July 19, 2023); *Gladney v. Luther*, No. 18-2966, 2019 WL 4077337, at *1, n.1 (E.D. Pa. Aug. 29, 2019).

[62] *Leake,* 594 F. App'x at 759.

[63] The Superior Court noted that if it did consider the merits, it would affirm the PCRA court's decision that after review of Cross's report, the report contains no evidence that was not presented to the jury. *Callahan*, 2021 WL 4119559, at * 4.

state court, but the Pennsylvania Superior Court rejected the claim as waived for failure to be supported with a citation to pertinent authority under Pa. R.A.P. 2119(b). As with Pa. R.A.P. 2119(c), this is an independent and adequate state procedural rule. The rule is independent of federal law, and it is adequate because it is "firmly established" and "regularly followed."[64] Rule 2119(b) is firmly established in the Pennsylvania Rules of Appellate Procedure and is well entrenched in Pennsylvania law.[65]

### C.      Cause and Prejudice

Mr. Callahan alleges that PCRA counsel was ineffective in failing to raise Claims 5, 6, and 9 in state court. Under *Martinez v. Ryan*, ineffectiveness of post-conviction counsel may constitute cause to overcome procedural default.[66] Prejudice must also result from ineffectiveness in failing to raise a claim before the PCRA court.

#### 1.      Claim 5

Alleging PCRA counsel was ineffective in failing to raise Claim 5, Mr. Callahan argues procedural default should be excused for his claim that trial counsel was ineffective in failing to suppress T.S.'s testimony, failing to investigate techniques used by her therapist to identify her "dreams" of sexual assault as actual memories, and failing to present a defense witness on the issue of recovered memories. Mr. Callahan cannot avoid procedural default if his underlying claim of trial counsel's ineffectiveness lacks merit. In order to succeed on the underlying ineffective assistance of counsel claim, Mr. Callahan must show that trial counsel performed

---

[64] *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

[65] *See, e.g.*, *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 532 (Pa. Super. Ct. 2016) ("Appellant's argument in this respect is fatally underdeveloped, as it includes no analysis or application of authority in support of his contention as required by Pa.R.A.P. 2119(b).").

[66] 566 U.S. 1 (2012).

deficiently and counsel's actions, or lack thereof, prejudiced the defense.[67] Counsel is presumed effective, and counsel's conduct is presumed to fall "within the wide range of professional assistance."[68] It is a petitioner's burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[69]

Here, trial counsel did not object to or move to exclude T.S.'s testimony, but he did attack the testimony as unreliable and unbelievable in his closing statement.[70] Similarly, he scrutinized the prosecution's expert witness in sexual assault, victim behavior, offender dynamics, and the impact of trauma who testified about T.S.'s memories. Trial counsel argued that, according to the expert's testimony, any reaction would have been consistent with sexual abuse. He also argued the expert's opinion was not based on reports or interviews with T.S.[71]

Mr. Callahan has failed to establish that trial counsel was deficient for failing to investigate the techniques used by T.S.'s therapist to recover these memories, and he has not identified this failure in the record. It is a reasonable trial strategy to challenge the veracity of the witness's testimony, here that of T.S. who was testifying about her experience with her therapist. The therapist was not called as a witness. Trial counsel focused on challenging T.S.'s credibility and veracity, rather than investigating the therapist's techniques, which were not presented as evidence in the trial.

Finally, Mr. Callahan has not pointed to a potential witness who could have refuted the prosecution witnesses regarding recovered memories, nor has he shown how the lack of such a

---

[67] *Strickland*, 466 U.S. at 687.

[68] *Id*. at 689-90.

[69] *Id*.

[70] 4/30/2015 Trial Tr. at 28-30 [Doc. No. 11-1].

[71] *Id*. at 8.

witness prejudiced him or was not a part of reasonable trial strategy by counsel. Because the underlying claim lacks merit, procedural default of Claim 5 is not excused.

        2.     Claim 6

Mr. Callahan argues the procedural default of Claim 6 is excused by PCRA counsel's ineffectiveness in failing to raise the claim. He provides nothing more than a conclusory citation to *Martinez* in support of this argument. Even if Mr. Callahan provided evidence of PCRA counsel's deficient performance, the underlying claim lacks merit. At its heart, the claim alleges the trial judge's instruction on credibility and prompt complaints did not match Pennsylvania's standard prompt complaint instruction, and trial counsel was ineffective for failing to object to the instruction.

The instruction provided to Mr. Callahan's jury did not state, as the standard instruction did, that delay in making a complaint "may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make."[72] It did properly direct the jury not to consider delay as

---

[72] Pa. SSJI (Crim), § 4.13A (2024) (omitting references to consent which would not be relevant to child victims).

The suggested jury instructions read: "The evidence of [name of victim]'s . . . delay in making a complaint does not necessarily make [his/her] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make. Therefore, the delay in making a complaint should be considered in evaluating [his/her] testimony and in deciding whether the act occurred [at all] . . . You must not consider [name of victim]'s delaying making a complaint as conclusive evidence that the act did not occur. . . . [Name of victim]'s failure to complain promptly [and the nature of any explanation for that failure] are factors bearing on the believability of [his/her] testimony and must be considered by you in light of all the evidence in the case. Pa. SSJI (Crim) § 4.13A (2024) (omitting references to consent which would not be relevant to child victims).

The trial judge in Mr. Callahan's case instructed the jury: "The defendant has argued that the delay in making a complaint of each of these victims makes her testimony unreliable; therefore, not credible. You must not consider the victim's delay in mak[ing] a complaint as conclusive evidence that nothing happened. You may not do that. You may, however, consider the victim's delay in making a complaint in judging her credibility. Again, you may say it affects her credibility, that delay affects her credibility, or you may say that delay does not affect her credibility. Delay does not necessarily justify an inference that the witness fabricated anything. In making the determination of whether that delay has any impact on the victim's credibility, consider the age of the victim, the degree of the defendant's authority over that person, the degree of the defendant's custodial control over that person and all other circumstances that may explain why that person delayed in reporting." 4/30/2015 Trial Tr. at 91-92 [Doc. No. 11-1].

16

conclusive evidence that a crime did not occur and that delay could be considered as it affects the witness's credibility. The jury instruction also included a direction, not present in the standard instructions, that "[i]n making the determination of whether that delay has any impact on the victim's credibility, consider the age of the victim, the degree of the defendant's authority over that person, the degree of the defendant's custodial control over that person and all other circumstances that may explain why that person delayed in reporting."[73] According to the Commonwealth, this instruction was, at the time of trial, part of the subcommittee notes to Instruction 4.13A in the Pennsylvania suggested standard jury instructions. The standard instructions are not binding—they provide guidance only.[74]

Mr. Callahan has not shown, or argued, that any part of the jury instruction was erroneous or would have misled the jury. The underlying claim of ineffectiveness is meritless, so Mr. Callahan cannot establish ineffectiveness of trial counsel in failing to object to the instruction, nor can he establish ineffectiveness of PCRA counsel for failing to bring a claim of ineffective assistance of trial counsel for failing to object to the instruction. The procedural default of Claim 6 is not excused.

       3.     Claim 9

Next, Mr. Callahan claims "all prior counsel," including PCRA counsel, were ineffective in failing to raise Claim 9, alleging ineffective assistance of trial counsel in failing to object to alleged prosecutorial "bolstering." Once again, the underlying claim lacks merit and the claim remains procedurally defaulted.

---

[73] 4/30/2015 Trial Tr. at 91-92 [Doc. No. 11-1].

[74] *See Commonwealth v. Simpson*, 66 A.3d 253, 274 (Pa. 2013).

Bolstering is prosecutorial misconduct wherein the prosecutor vouches for the credibility of a government witness through personal knowledge or some information outside of testimony.[75] Impermissible vouching includes: (1) the prosecutor assures the jury that the testimony of a state witness is credible; and (2) the assurance is based on either the prosecutor's personal knowledge or other information that is not before the jury.[76] Here, the statements from the prosecution's closing argument, which Mr. Callahan identifies as vouching are summaries of testimony from witnesses, couched by the prosecutor "submitting" to the jury that the witnesses told the truth, and include rhetorical questions that are not vouching, such as "why would they lie? What do they get? What do they get out of all this?"[77] The underlying allegation of bolstering lacks merit, so any objection by trial counsel would have failed. Accordingly, claims that PCRA counsel was ineffective in failing to claim trial counsel was ineffective are similarly unsuccessful, and procedural default of Claim 9 is not excused.

### 4.   Remaining Claims

To the extent Mr. Callahan argues that all of his claims may be excused by cause and prejudice resulting from ineffective assistance of PCRA counsel, he fails. Mr. Callahan has not shown that PCRA counsel was ineffective in failing to raise any of his claims. Under *Martinez*, procedural default may be excused if postconviction counsel was ineffective in failing to exhaust or bring a claim. This ineffectiveness standard is the same as the standard under *Strickland v.*

---

[75] *Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002).

[76] *Id.*

[77] 4/30/2015 Trial Tr. at 49, 51 [Doc. No. 11-1]; *United States v. Walker*, 155 F.3d 180, 188 (3d Cir. 1998); *United States v. Vaghari*, 500 Fed. App'x 139, 145-46 (3d Cir. 2012). Such rhetorical questions "do[] not maintain the credibility of the [witness] by referring to information outside of the record, nor [do they] contain a personal assurance of veracity." *Walker*, 155 F.3d at 188. The more "tethered to the record" a rhetorical question is, the more clear it is that the question is not vouching. *United States v. Ford*, 618 F. Supp. 2d 368, 393 (E.D. Pa. 2009). Here, the rhetorical questions were tethered to the testimony presented at trial.

18

*Washington*.[78] In order to succeed on a claim of ineffectiveness under *Strickland*, the underlying claim must have merit.[79] The Court adopts the R&R's analysis as to the merits of each claim in finding that none of the underlying claims are meritorious. Accordingly, Mr. Callahan has not established that PCRA counsel was ineffective in failing to bring any of these claims, and procedural default is not excused.

Mr. Callahan has not demonstrated cause and prejudice to excuse procedural default as to any of his 12 claims.

### D.    Actual Innocence Gateway

To meet the standard to overcome the procedural default, a petitioner must show cause and prejudice, or a fundamental miscarriage of justice. Showing a fundamental miscarriage of justice generally requires a showing of strong evidence of actual innocence.[80] Actual innocence is also an exception to AEDPA's statute of limitations, and cases considering actual innocence in this context are instructive. To satisfy the actual innocence statute of limitations exception, a petitioner must present new, reliable evidence of his innocence, and show that, by a preponderance of the evidence, it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.[81] Where there is sufficiently strong evidence undermining an innocence claim, a defendant is not entitled to "pass through the 'actual innocence' gateway."[82]

---

[78] 466 U.S. at 687.

[79] *Id*.

[80] *Schlup*, 513 U.S. at 314-15.

[81] *Wallace*, 2 F.4th at 151.

[82] *Id*. at 159.

19

The Court notes that Mr. Callahan did not raise claims of actual innocence in his initial or amended habeas petition. The first time he suggests any claims of actual innocence is in his reply, or traverse.[83] Accordingly, this claim is waived. The R&R cited the existence of *Schlup v. Delo* to note the possibility of an actual innocence gateway to consider procedurally defaulted claims. In his objections, Mr. Callahan claims the R&R did not accurately consider all evidence of actual innocence. For avoidance of doubt, the Court will consider such evidence.

Mr. Callahan presents allegedly "new" evidence, including affidavits from Mr. Callahan's son and his employer claiming that one victim recanted her allegations,[84] affidavits from Katherine Cross regarding the DNA evidence,[85] a report of deficiencies at the NMS Laboratories that do not identify any deficiency with testing in this case,[86] forensic bench notes and validation data,[87] and DNA controls and statistical calculations,[88] to be considered alongside trial testimony of the three victims, DNA evidence presented to the jury, the initial 2011 statements by K.S. recanting allegations after SANE examination, testimony of SANE nurse Bangs at trial, and testimony of an expert in sexual assault victim behavior.

As an initial matter, none of the evidence Mr. Callahan points to as "new evidence" actually qualifies as new, reliable evidence of innocence. New evidence "includes both newly discovered evidence as well as exculpatory evidence that counsel failed to discover or present at trial."[89] Katherine Cross reviewed the government's DNA expert report and provided similar

---

[83] *See* Pet's. Traverse at 8 [Doc. No. 21].

[84] Pet's. Traverse at ECF No. 27-33 [Doc. No. 21].

[85] Pet's. Traverse at ECF No. 48-54 [Doc. No. 21].

[86] Pet's. Traverse at ECF No. 48-54, at 4-5 [Doc. No. 21].

[87] Pet's. Traverse at ECF No. 48-54, at 3 [Doc. No. 21].

[88] Pet's. Traverse at ECF No. 48-54, at 13 [Doc. No. 21].

[89] *Wallace*, 2 F.4th at 152.

feedback at the time of trial. Indeed, trial counsel cross examined the Commonwealth's expert, Thomas Walsh, on the very issues Ms. Cross identifies in her newer affidavits. Any allegation of incompetence at the NMS lab has not identified a direct connection to Mr. Callahan's case.

Second, evidence that K.S. recanted an allegation in 2011 is not new. This evidence was presented to the jury.

Forensic bench notes, validation data and protocols, and statistical calculations existed at the time of trial. Mr. Callahan has not alleged counsel did not have access to them, and while he refers to such evidence, he has neither presented it nor has he explained how it supports his claim of innocence. In her 2023 affidavit attached to Mr. Callahan's Traverse, Ms. Cross alleges she had requested some of this information, but her affidavit does not report whether counsel requested this information from the prosecution nor made any representation that counsel did not have it.[90]

Next, the additional evidence presented as "new" is not reliable. Affidavits from Mr. Callahan's son and his employer, Bill Risko, claim K.S. recanted her allegation in September 2015, after trial but several years before the affidavits were signed and before Mr. Callahan's conviction was finalized on appeal. There is no explanation why the affidavits were not provided until 2024. Further, the affidavits are hearsay evidence, which is less reliable than a recantation from the source. One of the affidavits is provided by Mr. Callahan's son, who is not an unbiased source. There is no other evidence that K.S. recanted her testimony, and she has not made such representations to the Court. The affidavits are not reliable evidence of innocence. Finally, K.S. was not the only victim who testified at trial and Mr. Callahan was convicted of crimes against two other family victims. Even if K.S.'s recantation existed and provided reliable evidence, Mr.

---

[90] Pet's. Traverse at ECF No. 48-49 [Doc. No. 21].

21

Callahan cannot show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him of the crimes.

Regardless of whether these items procedurally allow a claim of actual innocence to avoid the procedural default bar, the evidence itself cannot meet the extraordinarily high standard set in *Wallace v. Mahanoy*.[91] A petitioner must show that, after considering all of the evidence, no reasonable juror would have voted to convict petitioner.[92] Here, the jury heard testimony from three different witnesses alleging sexual abuse by Mr. Callahan when they were minors under the age of thirteen. The jury was presented with DNA evidence, which was challenged by the defense. The jury also heard the defense challenges to the believability of the victim witnesses, including by identifying K.S.'s 2011 recantation after examination at the hospital and challenging the accuracy of T.S.'s dream-memory testimony. New evidence questioning the reliability of DNA testimony, hearsay testimony alleging K.S. recanted after she testified, and later evidence of misconduct unrelated to Mr. Callahan's case at the laboratory that processed the DNA, when considered in totality with all other evidence presented, do not establish that no reasonable juror would vote to convict Mr. Callahan. Accordingly, even if Mr. Callahan properly raised an actual innocence gateway claim and presented new evidence, the evidence itself does not meet the *Schlup* actual innocence standard to overcome procedural default. It is not more likely than not that no reasonable juror would have convicted him in light of the new evidence.

Because all of Mr. Callahan's claims are procedurally defaulted, and because he cannot establish cause and prejudice or that a fundamental miscarriage of justice would occur absent

---

[91] *Id.*

[92] *Id.* at 151.

consideration, this Court cannot consider the merits of his claims. Accordingly, the petition for a writ of habeas corpus will be denied.

## IV.    CLAIMS RAISED IN REPLY TRAVERSE

Mr. Callahan raised several claims for the first time in his Reply Traverse, including allegations of withheld material in violation of *Brady v. Maryland*; a claim of ineffective assistance of counsel for failing to present an expert to testify on "present memory/recovered memory"; and a claim that the PCRA court's refusal to grant an evidentiary hearing violated due process. A habeas petitioner may not raise new issues in a reply that should have been raised in the initial brief.[93] As with Mr. Callahan's claims of actual innocence, the other claims raised for the first time in his reply are waived and this court may not review their merits. The R&R properly dismissed the newly presented claims.

## V.    EVIDENTIARY HEARING REQUEST

In his Amended Habeas Petition and Reply Traverse, Mr. Callahan seeks an evidentiary hearing, discovery, and appointment of counsel.

Section 2254(e)(2) prohibits a federal court from holding an evidentiary hearing if a petitioner has failed to develop the factual basis of a claim in state court proceedings unless (a) the claim relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court or a factual predicate that could not have been previously discovered through the exercise of due diligence; or (b) the underlying facts would be sufficient to establish petitioner's actual innocence such that no reasonable fact finder would have reasonably found petitioner guilty.[94]

---

[93] *Winn v. Ferguson*, Civ. A. No. 19-3089, 2020 WL 4059832 at *5 (E.D. Pa. July 20, 2020) (citing *McNeil v. Johnson*, Civ. A. No. 18-10003, 2019 WL 3805118 at *1 (D.N.J. Aug. 12, 2019)).

[94] 18 U.S.C. § 2254(e)(2).

As discussed, Mr. Callahan does not meet the actual innocence standard. Nor does he cite a new rule of constitutional law on which he bases his claims. Accordingly, the Court is prohibited from holding an evidentiary hearing.

A habeas petitioner is not entitled to discovery as a matter of ordinary course.[95] Under Rule 6(a) of the Rules Governing Section 2254 and Section 2255 Cases, a judge may authorize discovery, in her sound discretion, for good cause shown. Good cause requires that a petitioner show that, if the facts were more fully developed, he could demonstrate an entitlement to relief. Because all of Mr. Callahan's claims are procedurally defaulted and the evidence as alleged would not demonstrate actual innocence, his request for discovery is denied.

A court may appoint counsel for an indigent habeas petitioner if the interests of justice require.[96] There is no constitutional right to appointment of counsel in a federal habeas corpus proceeding. As the R&R found, the interests of justice do not require appointment of counsel because it is clear all of Mr. Callahan's claims are procedurally defaulted and Mr. Callahan is not entitled to relief.

## VI.   CONCLUSION

Mr. Callahan's claims are procedurally defaulted, so they will be dismissed. Accordingly, his Petition for a Writ of Habeas Corpus will be denied. An order will be entered.

---

[95] *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

[96] 18 U.S.C. § 3006A(a)(2).